# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. J. K. TIMON, Minor.

UNPUBLISHED
May 2, 2017

Nos. 333788; 333789
Wayne Circuit Court
Family Division
LC No.   13-512300-NA

Before:  O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

I concur that statutory grounds exist warranting the termination of both respondents' parental rights to RJKT.  I respectfully disagree with the majority's analysis regarding whether RJKT's best interests would be served by termination of respondents' parental rights.

RJKT was placed with his maternal grandmother, Arlene Woods, in 2013.  RJKT's two older brothers also resided with Woods pursuant to the court's order.  By all accounts, RJKT thrived in Woods's care.  The three children shared a close bond.  Supervised visits with respondents enhanced RJKT's life.  The many caseworkers assigned to the family found no flaws in the children's custodial arrangement.

Under MCL 712A.19a(6)(a), a court is not required to pursue the termination of parental rights if "[t]he child is being cared for by relatives."  Our Supreme Court has construed this circumstance as "weigh[ing] against termination," expounding that placement with family is "an explicit factor to consider in determining whether termination was in the children's best interests[.]" *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).  In MCL 712A.19a(4), the Legislature expressed its intent that permanency planning must include consideration of a guardianship and permanent placement "with a fit and willing relative:"

> (4)  At or before each permanency planning hearing, the court shall determine whether the agency has made reasonable efforts to finalize the permanency plan. At the hearing, the court shall determine whether and, if applicable, when the following must occur:
>
> (a) The child may be returned to the parent, guardian, or legal custodian.
>
> (b) A petition to terminate parental rights should be filed.
>
> (c) The child may be placed in a legal guardianship.

-1-

(d) The child may be permanently placed with a fit and willing relative. . . .

At the final permanency planning hearing, the circuit court approved a kinship guardianship with Woods for the two older children, ages 17 and 16 at the time. But the court refused to even consider a guardianship for RJKT, age 7, explaining that for children under age 14 guardianships "create an environment where their permanents [sic] is compromised depending on how the case plays out. And sometimes it takes years to happen." According to other exchanges of record, the circuit court judge assigned to these proceedings has a personal, hard-and-fast rule that children under age 14 (the statutory age at which a minor may petition for a guardianship, see MCL 700.5204) are not eligible for a kinship guardianship. Respondent mother's counsel made more than one attempt to introduce evidence regarding potential benefits of Woods's guardianship for RJKT; the court rebuffed each attempt because it had precluded guardianship as an option for RJKT based on the child's age.

I believe the court clearly erred by enforcing its personal guardianship predilection in the absence of evidence that would have shed light on Woods's ability and willingness to provide permanence for RJKT. The United States Supreme Court said it best:

> Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand. [*Stanley v Illinois*, 405 US 645, 656-657; 92 S Ct 1208; 31 L Ed 2d 551 (1972).]

The circuit court's conclusive presumption that a guardianship would not serve a young child's best interests undermines a court's ability to fashion a truly individualized permanency plan. It may be that many kinship guardianships established for children of RJKT's age do not last for the entirety of the child's minority. But the record offers no evidence of this, and I am wary of imposing a guiding and rather arbitrary principle lacking any empiric justification.

Every family is unique, and so is every guardianship. Given that more than one DHHS worker familiar with the family recommended guardianship rather than termination, I would hold that the court clearly erred by taking this option off the table.

The majority points out that "the juvenile code does not specifically require or allow the trial court to consider whether a child should be placed in a guardianship instead of finding that termination is in a child's best interests as part of a termination hearing described under MCL 712A.19b." In my view, the majority has unnecessarily narrowed its focus. Although the circuit court most clearly articulated its policy at the conclusion of the termination hearing, its age-based presumption against guardianship permeated the proceedings. By limiting the full range of permanency planning tools made available by the Legislature, the circuit court may have inadvertently lessened the likelihood of both permanency and emotional stability for RJKT; the caseworker most familiar with the family testified strongly in favor of the guardianship option. Just as a policy mechanically *requiring* guardianships instead of termination for all children over age 14 would frustrate the will of the Legislature, so does a blanket rule disapproving them for all children under that age.

I would remand for a new permanency planning hearing, opening the evidentiary door to testimony regarding whether a kinship guardianship with Woods would best serve RJKT's interests.


/s/ Elizabeth L. Gleicher